# CHARLESTON.

COOK POTTERY COMPANY v. J. H. PARKER, *et al.*

Submitted September 1, 1920.   Decided September 7, 1920.

1. SET-OFF AND COUNTERCLAIM—*Unliquidated Claim for Damages Cannot be Set Off Against a Liquidated Demand.*

   An unliquidated claim for damages can not be set off against a liquidated demand, but if a plea of set-off pleads a claim not resting in uncertainty but is susceptible of accurate calculation as provided by the contract, it may properly be filed, and is improperly rejected.  (p. 584).

2. SAME—*Profits from Plaintiff's Breach of Contract to Deliver Goods too Speculative to be Proper Set-off.*

   But a demand by way of set-off for damages for loss of profits on goods which were to have been manufactured and sold to defendant but which were in disregard of the contract manufactured and sold by plaintiff to others, can not be made the subject of a plea of set-off against the plaintiff in a suit

by him against defendant on a separate and distinct demand. The profits which defendant might have made on such goods if plaintiff had fulfilled his contract being too remote and speculative to be the proper subject of set-off.   (p. 584).

3.   SAME—*Where Demand in Suit and Defendant's Unliquidated Claim Arise Out of Same Contract, the Claim May be Recouped.*

And when the claim of the defendant arises out of the same contract out of which the plaintiff's demand arose, the demand of the defendant though unliquidated may be recouped against the plaintiff's claim, and notice by defendant of such recoupment in the plaintiff's suit is improperly rejected.   (p. 585).

(WILLIAMS, PRESIDENT, absent.)

Case Certified from Circuit Court, Wood County.

Action by the Cook Pottery Company against J. H. Parker and others, partners, etc.   Rulings denying the sufficiency of two special pleas of set-off and of a notice of recoupment tendered by defendants, certified for review.

*Affirmed in part.   Reversed in part.*

*Merrick & Smith,* for plaintiff.
*H. P. Camden* and *Marshall & Forrer,* for defendants .

MILLER, JUDGE:

In this case the rulings of the circuit court denying the sufficiency of two special pleas of set-off, and of a notice of recoupment, tendered by defendants, have been certified to us for review.

The action is based on promissory notes of defendants, aggregating the sum of $5,173.00.   In each of the pleas defendants pleaded and relied on a contract between them and the plaintiff alleged to have been entered into on October 8, 1915, whereby in consideration of the defendants agreeing to permit plaintiff to manufacture the "Wedge Knob" therein mentioned and described, and to use in the manufacture thereof the device and design known as the "Nailit Knob," which was then owned and controlled by defendants, plaintiff agreed to manufacture and sell exclusively to said defendants said wares and merchandise known in the market as the "Wedge Knob", the same to be in-

voiced to defendants at the price of $5.65 per thousand, plus the cost of full weight ten penny nails at the price of $1.85 per hundred pound keg, and leather washers at the rate of ten cents per thousand, with the understanding that if the price of nails advanced or declined, such advance or reduction was to be adjusted in the billing price by the party of the second part; *and with the further agreement* on the part of the plaintiff that it was to add to the price aforesaid the sum of twenty-four cents per thousand to be credited to the account of defendants on the books of plaintiff and to be applied by it in reduction of the indebtedness of defendants to it; which said agreement was to remain in force for the period of five years and as long thereafter as either party did not violate the provisions thereof, and then to be cancelled at the option of the party who had not violated the provisions thereof.

In special plea number one the breach averred and the matter of set-off relied on is that prior to the action plaintiff in disregard of its said contract manufactured and sold directly to persons other than the defendants large quantities of said goods, which they were informed and believed amounted, at the rate of twenty-four cents per thousand added pursuant to the provisions of the contract, to the sum of $7,200.00, whereby plaintiff became indebted to defendants in that sum, which they were and are entitled to off-set against plaintiff's claim against them.

In the second of said pleas defendants plead and rely on the same breaches of the alleged contract pleaded in the first, but instead of the royalty or rent of twenty-four cents per thousand on the goods manufactured and sold as aforesaid, the defendants aver the right to off-set against plaintiff's claim against them the difference between the contract price of $5.65 per thousand at which the goods were to be billed to defendants and the price at which they were actually sold by plaintiff to other persons, or the sum of $1.50 per thousand, amounting at the rate of twenty-five thousand per day, alleged to have been manufactured in the four years preceding the institution of this suit, to $45,-000.00, profits realized by plaintiff in excess of the price at which they were to be manufactured, sold and delivered to defendants. The plea avers defendants' willingness and readiness to comply with said contract on their part, and the breach

thereof on the part of plaintiff, wherefore the right to off-set the said alleged damages against plaintiff's demands against them.

In the notice of recoupment it is alleged that on February 12, 1914, in view of the financial condition of defendant J. H. Parker and his liability to be drawn into bankruptcy, and in view of his former relationship to plaintiff and the selling arrangement theretofore existing between him and his son and plaintiff, it was proposed in writing by defendants and accepted by plaintiff, in consideration that said J. H. Parker would not go into bankruptcy and that the firm of J. H. Parker & Son would assume and pay the indebtedness of said J. H. Parker as well as the indebtedness of J. H. Parker & Son, that plaintiff would continue the selling arrangement theretofore existing between the parties, and that all sales and shipments made under said agreement should be made in the name of plaintiff, and upon which sales defendants were to be allowed a commission of ten percent, one-half of which was to be credited upon account of defendants' said indebtedness, giving preference in the application thereof to the indebtedness represented by the open account standing in the name of J. H. Parker, it being understood and agreed that said debts were to be extended and carried by plaintiff until they could be fully paid and satisfied by the application of one-half of the commissions accruing to defendants under the contract. And it is alleged in said notice that between the date of said agreement and the repudiation thereof by plaintiff, the one-half of defendants' commissions earned and credited as agreed amounted to $3,144.04, but that on March 14, 1916, plaintiff undertook to repudiate said contract and returned and refused to bill two several orders, one number 1434 for a shipment to John Y. Parker Company, the other number 1437 for a shipment to G. O. Paxson & Company, assigning as a reason therefor that said orders read, "As per our contract," and saying in its letter returning said orders, "As we do not consider that any contract exists between us covering the sale of our goods, we cannot accept these orders with this notation."

In this notice defendants also allege their readiness and ability to comply with the contract on their part, and that after

the repudiation of said selling agreement with plaintiff they further attempted to carry out the same, but plaintiff refused to take or execute their orders for the sale of goods but did accept renewals of the notes made pursuant to the contract.

The first objection common to both pleas is that the agreements pleaded are not alleged to have been made in writing, wherefore, if not in writing, plaintiff would have a right to rely on the statute of frauds. This is equivalent to saying that a contract if in writing must be pleaded as such. Such is not the law. If the other party to the contract not in writing wishes to avail himself of the defense of the statute, he may plead it or urge it as an objection to the evidence on the trial. *Skinker* v. *Armstrong,* 86 Va. 1011, 11 S. E. 977.

The next proposition urged in support of the rulings of the court in respect to both pleas is that the matters pleaded and relied on are not averred to have originated in or as growing out of the contract sued on, and as both amount to claims for unliquidated damages, upon familiar rules and principles and unliquidated demand for damages can not be made the subject of off-set to a liquidated demand. The proposition of law so affirmed is well settled in all jurisdictions. In our own cases we have *Clark's Cove Guano Co.* v. *Appling,* 33 W. Va. 470; *Case Mfg. Co.* v. *Sweeny,* 47 W. Va. 638; *Ashland Coal & Coke Co.* v. *Hull Coal & Coke Corp.,* 67 W. Va. 503; and other cases. The proposition is too well settled to call for citations of authorities.

But as to the application of this rule of practice; first, to special plea number one. Is the demand of defendants in that plea an unliquidated one? As we understand the plea it is for a demand for rent or royalty for the right to manufacture an article the rights to which are owned and controlled by defendants, and the rate of rent or royalty is fixed by the contract at twenty-four cents per thousand. True, the quantity manufactured is not stated, but it is averred the quantity is not known, and it is averred that the quantity manufacured was sufficient to have aggregated at least the sum of $7,200.00. If so, the amount was merely a question of computation, and the claim was no more unliquidated than if it had been for so many barrels of apples, or bushels of corn, or the quantity of any other

commodity. Unliquidated damages are such as the contract . furnishes no means of accurate estimation, but rest in the judgment or discretion of the jury. It is not necessary that the price should have been agreed upon, when goods are sold. This fact does not render the claim unliquidated in the sense that it can not be off-set against the demand of the other party. This is settled law by many authorities. *Tidewater Quarry Co.* v. *Scott,* 105 Va. 160, 52 S. E. 835, and text writers and cases cited. Whether defendants owned and controlled any right to manufacture the goods referred to in the plea is a fact which may arise on the trial, but the plea avers such ownership and control. It may be by patent or license, not averred. The question of right and ownership does not arise on a mere objection to the plea. In our opinion the plea is good as a plea of set-off and should have been filed.

Respecting plea number two, we are of opinion that the court rightly rejected it. It avers a claim for damages, being the difference between the price at which it is averred plaintiff agreed to manufacture and sell the goods to the defendants and the price at which the plaintiff itself sold them to others, an amount unascertainable from any facts alleged or known method of calculation. It is averred, it is true, that plaintiff manufactured and sold a particular quantity of the goods, but defendants have no right to the profit made by plaintiff on the goods manufactured and sold by it. The measure of their damages is what they could or would have made if plaintiff had kept its contract to make and deliver the goods to them at the stipulated price. This is not averred, and if it were averred, the claim would not be a liquidated demand in the sense applied to pleadings of this character, but speculative in nature, depending on facts not alleged and in no way provable as profits. *Douglass* v. *Ohio R. R. Co.,* 51 W. Va. 523; *Kyle* v. *Ohio River R. R. Co.,* 49 W Va. 296.

Now as to the notice of recoupment. We think defendants have the right to file and rely on that notice. It is argued against it and in support of the ruling of the circuit court, that the contract for sale and commissions had no relationship to the notes sued on; that that contract did not arise out of the same transaction. As alleged, we do not think this is a correct view or

interpretation of the contract. The notice alleges an agreement with J. H. Parker & Son to continue a sale arrangement previously existing, upon consideration that Parker would not go into bankruptcy, and that the defendant firm would assume and pay the liabilities of both to the plaintiff, and that the debts should be extended for such time as defendants would be able out of half their commissions earned to pay and satisfy the demands of plaintiff, preferring the open account against J. H. Parker, as stated. Part performance of this contract by defendants is averred and repudiation thereof by plaintiff.

True, the original notes of J. H. Parker were not a part of the same contract pleaded by the defendants, but in so far as any part of the notes sued on entered into the new notes given by J. H. Parker & Son at the time the new contract was made, and when they assumed the prior indebtedness as alleged, they became a part of the new contract, providing for their payment by commissions to be earned, and we think the damages and loss of commissions sought to be recouped against the plaintiff's demands by reason of the alleged breach of that contract must be regarded as a claim arising out of the same contract as the one sued on, and that the rule of law applicable in such cases applies. The facts distinguish the case clearly from *Clark's Cove Guano Co.* v. *Appling, supra,* and the other cases cited and relied on by plaintiff's counsel.

We are therefore of opinion to reverse the rulings of the court below as to plea number one and as to the notice of recoupment and to certify back our conclusion to the circuit court with direction to permit said plea and said notice to be filed.

*Affirmed in part. Reversed in part.*