## CHARLESTON.

HOOPER-MANKIN FUEL COMPANY *v.* SHREWSBURY COAL COMPANY *et al.*

Submitted May 8, 1923. Decided September 18, 1923.

1. SET-OFF AND COUNTERCLAIM—*Unliquidated Demand Growing Out of Related but Separate Contract can not be Set off Against Liquidated Demand.*

    In an action on a contract for a liquidated demand, the defendant can not set off against plaintiff's claim an unliquidated demand growing out of plaintiff's breach of a separate and different, though related, contract from the one sued on. (p. 445).

2. SAME—*Seller of Output of Coal Mine can not Offset Such Unliquidated Claim Against Note to Purchaser for Advances.*

    Where the contract for the purchase of the entire output of a coal mine for a stipulated period provides that the purchaser is to advance to the seller from time to time sums of money as needed to put his mine in condition to enable

him to perform the contract on his part and does so, and as provided in the contract the seller executes his note to the purchaser, the money so advanced constitutes the consideration for the note, and in a suit thereon by the payee of the note, the seller can not offset his unliquidated claim for damages for the breach by the payee of his contract to take the output of the mine; such claim is the proper subject of recoupment, but not of set-off.     (p. 445).

Error from Circuit Court, Kanawha County.

Action by the Hooper-Mankin Fuel Company against the Shrewsbury Coal Company and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Payne, Minor & Bouchelle,* for plaintiffs in error.
*Price, Smith, Spilman & Clay,* for defendant in error.

MILLER, PRESIDENT:

The controlling question presented is whether the trial court erred in rejecting the special plea of set-off of the Shrewsbury Coal Company against the note sued on in the plaintiff's action. The note originated in a contract between the parties, by which the plaintiff agreed to purchase the entire output of the defendant's coal mines at Shrewsbury, W. Va., for the period of one year from August 16, 1920, at the price of $5.50 per net ton, run of mine, f. o. b. mines, the same to be paid for in cash on or before the 15th day of each month for all coal shipped during the preceding month, as stated in the contract, but subject to certain increases or decreases, upon conditions therein stated.

The provision of the contract out of which the note sued on originated, as set forth in the rejected plea, was that the plaintiff was to advance to the defendant the sum of $7,500.00, for which defendant was to execute to plaintiff its negotiable note or notes as the same should·be advanced, endorsed by the defendants W. I. Campbell, J. H. Campbell and M. C. Jennings, and payable on demand to the order of the plaintiff, with interest, etc. And the further agreement with respect to said advancements was that the plaintiff might withhold and retain out of the price for the coal at the rate of one

dollar per ton on all coal mined and shipped under the contract, to be applied as credits on said note or notes, but nothing was to be so retained or applied until sixty days from the date of the contract, and thereafter the amounts so retained were to be so applied until said note or notes should be fully repaid.

The plea further averred that confiding in the promises and undertakings of the plaintiff to take said output, and with its knowledge and consent, and at its instance, defendant afterwards expended a large part of the said sum of $7,500.00, and other large sums of money, amounting in the aggregate to $3,500.00, in developing its said mines for the purpose of carrying out the said contract, and executed and delivered to the plaintiff the promissory note upon which, or a renewal thereof, the action is founded, and that there was no other consideration or inducement for the making thereof, and that it was further agreed and expressly stated therein that the purpose of said contract was to insure defendant a market for the output of its mine and to insure plaintiff that quantity, at the prices agreed, and that any departure from or failure to keep and perform the terms of the contract was to be considered prima facie evidence of damages to the party injured thereby.

The plea further averred that plaintiff did not perform or regard its said promises and undertakings, but that it wholly failed, in that, from January 1, 1921, until August 6, 1921, when said contract by its terms expired, it failed and refused to take and accept the entire output of said mines or any part thereof, at the prices agreed upon, although often requested by defendant; that during all the time aforesaid defendant was ready and willing to furnish its entire output to plaintiff, which amounted to an average of 110 net tons per day for each of the 140 working days during said period; that the cost of producing said coal, if plaintiff had accepted the same, would have been $2.29 per net ton; that defendant was unable to sell said coal so sold to plaintiff to any other person or persons at a price which would have produced any profit after paying costs of production; wherefore, this plea avers, defendant had sustained damages amounting to the sum of $57,134.00, which was still due and unpaid to it by the

plaintiff. Therefore the plea averred defendant was ready and willing, and thereby offered, pursuant to the statute in such cases provided, to set off and allow the same against the sum of money payable to the said plaintiff by the defendant by force of the writing sued upon, to the extent thereof.

At the conclusion of the trial, the court, on motion of the plaintiff, struck out all of defendant's evidence relating to said contract and directed a verdict for the plaintiff for the sum of $8,049.47, on which the judgment complained of was pronounced.

The record shows that in the order sustaining the objection of the plaintiff to the filing of said special plea, the court proposed to allow the matters of said plea to be set up in a notice of recoupment, or to treat said plea as such notice, if the defendant so desired, in either case limiting the amount of recovery to the amount of plaintiff's demand, but the defendant by its attorneys refused to file a notice of recoupment or to allow said plea to be treated as such. So that, as already stated, the pivotal question is, did the court err in rejecting said special plea as a plea of set-off?

It is apparent from the averments of the plea and the contract offered in evidence, that defendant proposed thereby to offset its unliquidated demand arising out of the same contract against the plaintiff's demand against it, claiming the right to do so under chapter 126 of the Code. This, as numerous decisions of this court hold, can not be done. They say that an unliquidated claim, though arising out of the same transaction, can not be the subject of set-off. *Clark's Cove Guano Co.* v. *Appling,* 33 W. Va. 470; *Case Mfg. Co.* v. *Sweeney,* 47 W. Va. 638; *Ashland Coal & Coke Co.* v. *Hull Coal & Coke Corp.,* 67 W. Va. 503; *Monongahela Tie & Lumber Co.* v. *Flannigan,* 77 W. Va. 162; *Cook Pottery Company* v. *J. H. Parker et al.,* 86 W. Va. 580.

An exception to the general rule is that where the contract between the parties itself furnishes the means of ascertaining by mere calculation the damages sustained by defendant from plaintiff's breach of the contract, as was held with respect to plea number one involved in *Cook Pottery Co.* v. *Parker, Supra,* a plea of set-off is proper.

True, the plea in this case avers that the average output

of defendant's mine would have been 110 net tons per day for the 140 working days during which plaintiff refused to take the coal, and that the cost of producing the coal, if plaintiff had accepted it, would have been $2.29 per net ton, the difference between the price or prices stipulated for the coal and the production cost aggregating, according to the plea, the sum of $57,134.00; but there is nothing in the contract stipulating such a basis for computation of damages. Surely the amount of production would have been speculative, depending on many conditions; and the cost per net ton was equally speculative in character, depending on external evidence, and which the jury would have been obliged to determine, Besides that, the defendant still retained the coal in its mines, which would have to be considered.

The court proposed to allow defendant to recoup its damages to the extent of plaintiff's demand, which it declined, insisting on its right to offset its unliquidated demand and to recover the damages in excess of plaintiff's claim, which of course the court would not have been justified in permitting.

But the argument is advanced here that the contract to take the output of defendant's mine was in part the consideration for the note sued on, and that the plea was proper on this ground. This is a non sequitur. The facts alleged in the plea and the terms and conditions of the contract offered in evidence do not so show. The consideration for the note was the money advanced thereon by plaintiff to defendant. While the defendant may have been induced to borrow the money and execute its note, the subject matter of the action, plaintiff's agreement to take the output of defendant's mines and pay therefor at the stipulated price was not the immediate consideration, and the plea would not be justified under section 5, chapter 126 of the Code. *Sterling Organ Company* v. *House*, 25 W. Va. 64.

Our opinion is to affirm the judgment.

*Judgment affirmed.*