CHARLES D. WILDES, RECEIVER OF THE VERTICAL PAPER COMPANY, v. M. NELSON AND JAMES W. ALLEN.

(Filed 12 April, 1911.)

1. Contracts—Failure to Perform—Dependable Conditions.

    A party to a contract may elect to treat it as ended upon the failure and inability of the other party to perform a dependent stipulation therein and which extends to the entire measure of the obligation.

WILDES *v.* NELSON.

**2. Same—Patents—Termination of Contract—Election—License.**

When it appears from a written contract entered into between a patentee and another that the purpose of the former was solely to arrange for the manufacture and sale of the patented implement, for which he was to receive a certain commission on the sales, the right of the latter under the contract is dependent upon the fulfillment of the obligations imposed upon him, and upon his failure and inability to perform these conditions the patentee may regard the contract as at an end. *Semble*, in this case, the contract was one of license and not of assignment.

**3. Contracts—Failure to Perform—Termination—Election—Corporations—Receivers.**

The receiver of an insolvent corporation can enforce no right under a contract previously entered into by the corporation and a patentee, wherein the rights of the corporation are made dependent upon the manufacture, advertisement, and sale of the patented article and payment to the patentee of a commission or royalty on the sales, when admittedly the corporation had failed to perform the conditions imposed on it and was unable to do so.

APPEAL from *Whedbee, J.,* at February Term, 1911, of WAKE.

Civil action, heard on case agreed. It was made to appear that, on 12 June, 1905, the defendant Nelson, patentee and owner of an improved paper cutter, entered into a contract with M. N. and E. M. Andrews, parties of the second part, by which the said parties acquired the exclusive right to manufacture and sell said patent and any and all improvements on the same that might be made by the party of the first part. The parties of the second part contracting "to manufacture or cause to be manufactured said paper cutter and to push sale of same." That on 4 June, 1906, the said Andrews Bros. assigned said contract to the Vertical Paper Cutter Company, a corporation, and this company acquired all the rights and interests and assumed all the obligations of the Andrews Bros. under their contract of 12 June, 1905, and this was done with the approval and assent of defendant Nelson. That, prior to 21 December, 1907, the Vertical Paper Company ceased to sell said implements; having become hopelessly insolvent, they were unable to further manufacture and furnish or sell same,

and, thereupon, said Nelson elected to treat the contract as discharged and ended by the aforesaid breaches thereof by the said corporation. That on 8 January, 1908, in an action instituted by the Ohio Brass and Iron Manufacturing Company in behalf of itself and other creditors of the Vertical Paper Company, and on the ground of insolvency, Charles D. Wildes having been duly appointed receiver of the property and assets, summons was issued against said Nelson and complaint filed to establish the rights and realize on the interests of the Vertical Paper Company in the patent and as acquired under and by virtue of the contract. In reference to this demand, the case agreed further states: "That since his appointment, the receiver of said Paper Cutter Company has failed to carry out or perform any part of said contract in respect to the manufacture and sale of said paper cutters, which devolves upon said Paper Cutter Company under said contract, and is and has been unable to do so, and also was without authority to do so under the order appointing him receiver." On the contract and facts in reference thereto, stated in the case agreed, the court entered judgment that defendant Nelson go without day, and the receiver excepted and appealed.

*John W. Hinsdale and Walter L. Watson for, plaintiff.*
*E. L. Travis, W. E. Daniel, and Murray Allen for defendant.*

HOKE, J., after stating the case: The cause, in our opinion, has been correctly decided. The contract, on which the rights of these parties depend, contains preamble and recitals:

"That whereas the party of the first part did obtain letters patent of the United States for an improvement in paper cutters, which letters patent are numbered 718722, and bear date of 20 January, 1903; and whereas the party of the first part is the sole owner of said patent and of all rights under same; and whereas the parties of the second part are desirous of acquiring the exclusive right to manufacture and sell said patent paper cutters, including any and all improvements that may be made in said patent by the party of the first part; and whereas the party of the first part is desirous of having the

parties of the second part assume the entire control of the manufacture and sale of said patent paper cutter: Now, therefore, in consideration of the premises and the further consideration of the mutual promises and agreements hereinafter set out, and for the purpose of fully defining the rights and privileges of the parties hereto, and the payment of the sum of $10, the party of the first part and the parties of the second part do promise, agree, and contract, each with the other," etc.

And on matters more directly relevant, then stipulates as follows:

"First. The party of the first part hereby licenses and empowers the parties of the second part and their assigns the exclusive right to manufacture and sell said patent paper cutter, which not only embraces the patent paper cutter as now designed, but includes any and all improvements in or modifications of said patent that may hereafter be made by the party of the first part, in the United States of America and in all foreign states and countries, to the full end of the term for which said letters patent are or may be granted, as fully as that right is now enjoyed by the party of the first part; said parties of the second part to have the right and authority to manufacture and sell said patent paper cutter under the name and style of 'The Nelson Paper Cutter, Andrews & Andrews, Sole Manufacturers and Agents,' or under whatever name said parties of the second part may elect, either now or hereafter, with full right and privilege to change said name or style whenever they may so elect.

"Second. The parties of the second part are to manufacture or cause to be manufactured said improvement in paper cutters, and are to sell the same, using due diligence to push the sale of said paper cutter through agents and jobbers as may be deemed most advantageous by the parties of the second part, and to this end to use such advertising means as may be necessary to fully present the desirable qualities of such invention to the public. . . .

"Fourth. The parties of the second part agree to pay to the party of the first part the sum of 10 cents for each and every

paper cutter sold under this agreement for cash as aforesaid and for which pay has been received, said payment to be made in cash or by New York draft at the time of rendering the statement hereinbefore mentioned, to wit, on the first day of January and July of each and every year, beginning the first day of January, 1906.

"The parties of the second part are authorized and empowered to sell said letters patent at such price as they may deem advisable; and the party of the first part is authorized and empowered to sell said letters patent for a sum not less than $10,000 : *Provided,* that an option shall first be given to the other party by the party offering to sell, for thirty days, to confirm or disaffirm such sale; that if said party disaffirms such sale, then he is to, within ten days after such disaffirmance, pay to the party desiring to sell, in cash, one-half of the amount offered as purchase price—such amount offered as purchase price to be a *bona fide* offer to purchase. That in the event of a purchase by one of the parties to this contract under the provisions of this clause, all right, title, and interest of the party selling said letters patent shall vest in the party purchasing upon the payment of the purchase price, except that it shall in no manner affect the right of the party selling to demand and receive his part of the proceeds of all sales up to the date of such sale of his interest to the other party."

Construing the language, and on authority, the contract would seem to be the grant of a license and not an assignment (*Waterman v. MacKenzie,* 138 U. S., 252), and a perusal of the entire instrument affords, we think, convincing evidence that it was the desire and sole purpose of the patentee to arrange for the manufacture and sale of the implement, and that the royalty arising from the sale was the only recompense to be looked for or received by him. This is evident, not only from the preamble and the general scope and purpose of the contract, but is sustained further by the recital of the "consideration of the premises and of the mutual promises and agreements hereinafter set out," and by the provision that "the parties of the second part are to manufacture or cause to

be manufactured said implement and to sell the same . . . using diligence to push the sale through agents and jobbers, etc., and to use such advertising means as may be necessary to fully present the desirable qualities of this invention to the public"; and from this it follows that the grant of the license by the party of the first part, and the provisions for the manufacture and sale of the implement by the parties of the second part, were dependent stipulations, and on failure of performance by the parties of the second part or their assigns and on the admission of their utter inability to perform further, the patentee was relieved of his obligations under the contract, and was in the proper exercise of his rights when he "elected to treat the said contract as discharged and ended by the aforesaid alleged breaches." Anson on Contracts, 1 Amer. Ed., p. 362; Paige on Contracts, sec. 1453; Clark on Contracts, p. 451. The doctrine was applied in the cases of *Telfener v. Russ,* 162 U. S., 270; *Bank v. Hagner,* 26 U. S., 455, and numerous decisions in our Court are in recognition of the principle. *Vallette v. Booth,* 131 N. C., 37; *Andrews v. Andrews,* 122 N. C., 352; *Ducker v. Cochrane,* 92 N. C., 600; *Lutz v. Thompson,* 87 N. C., 334.

In *Telfener's case, supra, Associate Justice Field* quotes with approval from the opinion in *Bank v. Hagner* on independent and dependent covenants as follows: "It is evident that the inclination of courts has strongly favored the latter construction as being obviously the most just. The seller ought not to be compelled to part with his property without receiving the consideration, nor the purchaser to part with his money without an equivalent in return. Hence, in such cases, if either a vendor or a vendee wish to compel the other to fulfill his contract he must make his part of the agreement precedent, and cannot prevail against the other without an actual performance of the agreement on his part, or a tender and refusal. And an averment to that effect is always made in the declaration upon contracts containing dependent undertakings, and that averment must be supported by proof."

This position is not affected by the provision in the contract for a division of the proceeds in case of sale. This stipulation

by correct interpretation was only existent during the life of the contract, and when it was made to appear that the contract was at an end by reason of default on the part of the claimants, a failure to perform dependent covenants which were essential and controlling, the provision in question was no longer binding. The authorities cited by appellant were chiefly cases where the instrument assailed was an executed conveyance or the covenants and promises were independent in their nature. In *McBurney v. Goodyear*, 75 Mass., 569, a case very much relied upon, it seems there was an independent consideration, sufficient to support the contract; nor was there any allegation or suggestion of default on the part of the claimant.

There is no error, and the judgment below must be affirmed.
No error.