C. B. WEST v. C. O'H. LAUGHINGHOUSE, J. W. HIGGS ET ALS.

(Filed 3 October, 1917.)

1. **Mechanics' Liens—Building Contracts—Abandonment—Damages.**

Where a contractor abandons his contract for the erection of a building in his own wrong as to the remaining executory features thereof, he cannot maintain an action for its breach, it being required that he allege and prove a performance of his own antecedent obligations.

2. **Same—Breach—Waiver—Architect.**

Where a nonresident architect, in full charge of the erection of a building, whose duty it was to visit the building for the purpose of supervision, whenever he deemed it necessary, within a few days after an acknowledged and material departure from the contract by the contractors, notified the contractor that the building would not be accepted unless the breach were remedied, which the contractor refused to do, the mere fact that the breach was with the knowledge of the local representative of the architect, who made no protest, will not be considered as a waiver of the terms of the contract.

3. **Same—Penalty—Additional Costs.**

Where the contractor for the erection of the building abandons it in his own wrong, thereby causing an additional expense to the owner, arising from extra services required of his architect, and a delay has occurred in the completion of the building, for which a stipulated sum per day was agreed to be allowed the owner, this sum so allowed, on the facts of the

present case, is to be regarded as in the nature of a penalty, and the legal rate on the capital invested was properly allowed the owner, together with the amount due the architect for the extra services thus required of him.

**4. Reference—Consent—Agreements — Mechanics' Liens — Creditors' Bill— Parties—Contracts—Amounts Due—Pro Rata Distribution—Statutes.**

Where, in an action by the contractor against the owner of the building to recover an amount alleged to be due him, the matter is referred, with the consent of the parties, containing a provision that any amount due by or in the hands of the defendant shall be applied to the debts incurred in the construction and completion of the building, arising out of labor, services or material that went into such construction, etc.: *Held*, the claimants enumerated, by presenting and filing their claims with the referee, made themselves parties, as in a creditor's bill, and thereafter could acquire no preference by filing their claims with the owner (Rev., secs. 2019, 2020, 2021, 2022, 2023), and are bound by the agreement making the amount ascertained to be due into a trust fund for *pro rata* distribution.

**5. Same — Priority — Payment — Confirmation — Final Judgment—Owner's Risk.**

Where it is agreed in a consent reference that the amount ascertained to be due a contractor for the building shall be distributed *pro rata* among the laborers, material men, etc., the report of the referee is subject to modification before its confirmation, and before final judgment to be set aside for good cause shown; and the owner paying out the funds in preference to some of the creditors contrary to the terms of the agreement, does so at his own proper risk.

**6. Reference—Consent Order—Agreement — Mechanics' Lien — Contracts— Penalty—Damages—Lienors.**

Where, under a consent reference, binding upon the parties, it has been agreed that the amount due from the owner under the building contract, to the contractor, shall constitute a fund to be divided between claimants, who furnished material, and laborers on the building, etc., and there is provision for damages to the owner for delay in the completion thereof, by the express terms of the agreement to refer, the owner is entitled to his damages before the distribution of the funds, and the claimants may not successfully contend that this damage was a personal charge against the contractor, and that it should not be allowed in preference to their claims.

CIVIL ACTION, heard on exceptions to report of referee, before *Stacy, J.,* at March Term, 1917, of PITT.

· The principal action was instituted by plaintiff, a contractor, who claimed that, having entered into a contract with the owners to build an office building at a contract price of $40,328.80, he did the work on time, to a stated period, when defendants wrongfully refused to pay him an installment due, and he was forced to abandon the work, and he sued for certain labor done and material furnished, and for profits to accrue on performance, etc.

Defendant denied that any amount was due for work, etc., done under the contract; alleged, further, that plaintiff had voluntarily abandoned the contract in his own wrong, having refused to remove certain wood-work, when directed by the architect, placed in the building before the plastering had dried, contrary to the express provisions and stipulations of the contract; that he thereupon voluntarily quit the work, as stated, and defendants, the owners, were compelled to finish the building themselves, and set up, by way of counterclaim, damages for delay and increased expense. The contract, among other things, contained stipulation for damages for such delay at the rate of $25 per day.

At September Term, 1915, the cause was referred to G. V. Cowper, Esq., the order of reference, among other things, providing that by consent any amount found due from the owners under the contract should be applied in discharge of all debts and liabilities for labor, services or material that went into the construction of the building, etc., before any recovery may be adjudged in favor of plaintiff, personally, and to that end the referee shall report all such debts, claims and demands as shall appear to be justly and properly due therefor at the time of the hearing, etc.

The referee, after hearing evidence and argument, made his report to February Term, 1916, sustaining the positions of the defendant, and finding, in effect, that plaintiff had voluntarily and wrongfully abandoned the contract; that nothing was due him personally for work and labor, and allowing defendant, by way of counterclaim, $600, increased pay to architect, and $1,061.96 for delay of 158 days in completion of building incident to defendant's default.

This damage for delay was allowed, not at $25 per day, but on the basis of the interest on the value of the building, as contemplated and provided for in the contract.

The court sustained in full the report of the referee, adopting the same as the judgment of the court, and plaintiff, having duly excepted, appealed.

There was appeal also by certain material men who had been allowed to formally intervene for the purpose, and who excepted to report of referee in not allowing them a proper *pro rata* in the sum of $4,829.31, balance due on account after completition of building.

*Julius Brown and J. C. Lanier for intervenors.*
*Harding & Pierce and Ward & Grimes for plaintiffs.*
*S. J. Everett, Harry Skinner, and F. S. Spruill for appellees.*

PLAINTIFF'S APPEAL.

HOKE, J.   At the time plaintiff abandoned the contract, there was nothing due him by reason of labor performed or materials furnished, and the referee having found further that the abandonment was in plaintiff's own wrong as to the executory features of the agreement, the recognized position in the law of ordinary contracts should prevail—that one party to a contract cannot maintain an action for its breach without averring and proving a performance of his own antecedent obligations (*Ducker v. Cochrane,* 92 N. C., 597), a position approved in *McCurry v. Purgason,* 170 N. C., 468; *Supply Co. v. Roofing Co.,* 160 N. C., 445; *Wildes v. Nelson,* 154 N. C., 590; *Corinthian Lodge v. Smith,* 147 N. C., 244; *Tussey v. Owen,* 139 N. C., 457, and many other cases.

Plaintiff does not controvert this as a correct legal proposition, but contends that, although he placed this inside furnishing work in the building before the plastering had dried, and refused to take it out when directed to do so by the architect, contrary to an express provision of the contract, he was justified in his refusal because one G. S. Holland, who stayed at the building, representing the architect, saw him putting this wood trimming in, and made no protest.   Undoubtedly, a stipulation of this kind might be waived by the owners or by an agent having proper authority in the matter, but the facts, as declared by the referee, do not in our opinion show any such acquiescence or waiver as to justify a departure from this provision of the contract.   It appears that the architect resided in Rocky Mount and came to Greenville only when he considered his presence necessary to a proper supervision of the work; and while Holland, his representative on the ground, did see the contractor placing the inside woodwork in breach of the agreement, the finding of the referee on this point is: "That soon after plaintiff began to place the finished woodwork and trimmings in the building, as heretofore set forth, and soon after Holland and the owners became aware of it, J. C. Stout, the architect, came to Greenville in person, and after he had seen the building, and especially the situation in reference to the plastering and finishing, he notified the contractor that this work would not be accepted under the contract," etc.

Plaintiff having admitted he acted here in violation of the contract stipulation, the burden is on him to justify his conduct and the facts disclosed in this finding of the referee, as stated, fails to establish either acquiescence or waiver.

On the damages, the referee, favoring the defendant, held that the $25 per day, stipulated for by the contract in case of delay in completing the building, was in the nature of a penalty, and awarded damages for this period, estimated by the interest on the capital invested, a course ap-

proved in several cases with us on the subject. *Furniture Co. v Express Co.,* 148 N. C., 87; *Rocky Mount Mills v. R. R.,* 119 N. C., 693; *Foard v. R. R.,* 53 N. C., 235. And the $600 allowed for the architect was by reason of extra services rendered necessary by plaintiff's breach of the contract and directly incident to it.

On careful consideration of the record, and the very full and intelligent report of the referee filed in the cause, we find no error which gives the plaintiff any just ground of complaint, and as to him the judgment is

Affirmed.

APPEAL BY CERTAIN MATERIAL MEN, CLAIMANTS, AND DESIGNATED IN THE RECORD AS INTERVENORS.

HOKE, J. This suit was instituted by the plaintiff against the owners of the property on 24 November, 1914, summons being served on the 25th, and at September Term cause was referred to E. V. Cowper, Esq., of the Kinston bar, and in the order of reference there was inserted by consent of the parties a provision that any amount found to be due by or in the hands of the defendants under the contract shall be applied to the payment and discharge of all the debts and liabilities properly incurred in the construction and completion of the building, arising out of labor, services or material that went into such construction, etc.

On the hearing, a large number of such claims were presented and filed before the referee and embodied and set forth in section 12 of the report. The referee then classified certain of these claims in sections 14 and 15, section 14 showing an itemized statement, aggregating $3,021.44 for material used in and upon the building, and which had not been filed with the owners; and section 15 showing an itemized statement for material, etc., aggregating $4,426.77, which had, *in this proceeding,* been filed with the said owners; and the referee thereupon holds as one of the conclusions of law that those claims which had been filed with the owner should be paid in full out of the amount found due from the owners, and the balance, $402.38, shall be shared *pro rata* among the claimants in section 14.

To this conclusion the claimants in section 14, styled intervenors, having obtained leave of court for the purpose, filed an exception, contending that all of these material men should share equally in the amount to be apportioned. The ruling of the referee was, no doubt, based upon a construction of sections 2019, 2020, 2021, 2022, 2023 of Revisal, giving to subcontractors furnishing material a valid claim on any amount due from the owner, and also a lien on the building to that amount, if required, when they shall have given notice and filed an itemized statement of their claims with the owner.

The meaning and proper applications of these sections have been before the Court in several recent cases—*Foundry Co. v. Aluminum Co.,* 172 N. C., 704; *Brick Co. v. Pulley et al.,* 168 N. C., 371; *Mfg. Co. v. Andrews,* 165 N. C., 285—and a perusal of these cases, and of the statute referred to, will disclose that such subcontractor may, by filing an item-ized. statement, acquire a claim against any balance then due from the owner, or which may be earned under the contract, and a lien therefor on the building, not exceeding that amount. And in the *Foundry v. Mfg. Co. case,* more particularly, it is held that this amount is to be considered as a trust fund, to be divided equally among those claimants who have complied with the statute by filing a proper notice. This interpretation. is emphasized by the language of section 2023, to the effect that in such a case "it shall be the duty of the owner to distribute the amount *pro rata* among the several claimants, as shown by the itemized statement which has been furnished him."

While this view might sustain the conclusion of the referee on this. question if the matter was an adjustment *inter partes,* and possibly if the claimants had filed their itemized statements with the owners before suit brought, the position cannot obtain in the present instance by rea-son of the terms and effect of the order of reference, and by which it was agreed that all claims for material should share in any amount due from the owners to the contractors. Under that order and the provision agreed upon, these claimants all appeared and presented their claims,. and the amount due under the contract, by their consent, to be consid-ered and dealt with as a trust fund in which the designated material-men were to share equally. After that time no one creditor or claimant could obtain advantage over another by filing his claim with the owner. The action as to them had taken on the nature of a creditor's bill for the proper distribution of a common fund and was no longer subject to a preference by action *inter partes.* In such suit, unless a claim is con-tested, in which case it is customary to file special pleadings in refer-ence to it, that the issues may be the more intelligently determined, no formal order is necessary to make these claimants parties. They be-came such by presenting and filing their claims with the referee, and were thereby bound by the terms and significance of the order of refer-ence, which clearly contemplates and requires an equal distribution of the fund. These positions are in accord with the recognized principles applicable to general creditors' bills, and are sustained by decisions of this Court dealing with the subject. *Fisher v. Bank,* 132 N. C., 771; *Bank v. Bank,* 127 N. C., 432; *Pipe Co. v. Woltman,* 114 N. C., 178; *Hancock Bros. v. Wooten,* 107 N. C., 9; *Warden v. McKimmon,* 94 N. C., 378; 6 Pomeroy's Eq., secs. 894-895.

It is urged, on behalf of the owners, that a *pro rata* distribution should not now be ordered, because they have paid some of these claimants in (section 15) in full, and, after the report of the referee awarding such payments, had remained on file for some time unexcepted to.

It is well understood that the report of a referee is subject to modification on proper application at any time before it is confirmed, and after that and before final judgment, the order of confirmation may be set aside for good cause shown.

These exceptions entered, filed by leave of court and before confirmation, are in accord with regular order and procedure, and the defendants paying with full notice of this and before confirmation must be held to have paid at their peril. 34 Cyc., pp. 870 and 871. A position all the stronger here as they had agreed to an order of reference requiring the amount due from them should be shared equally by material-men, and these claims for material had been duly filed with the referee in the cause.

It is insisted further for intervenors that the amount of $1,061.96 allowed the owners as damages for delay is a personal claim against the contractor plaintiff and should not be considered a proper deduction from the balance to be shared by claimants. Whatever may be the merits of such a position, we think it is not open to appellants on this record and by reason of the stipulation in the order of reference that the "amount due from defendants under the contract" shall constitute the fund to be divided. The contract, in express terms, provides for damages for this delay, and the appellants are concluded by this clause of the order.

There is error, and this will be certified that the judgment be so modified as to allow the claimants in sections 14 and 15 of the report to share equally in the balance due as found by the referee.

Error.

BROWN, J., did not sit.