# CHARLESTON.

THE COOK POTTERY COMPANY *v.* J. H. PARKER AND SON.

Submitted September 7, 1921.    Decided September 13, 1921.

1.    INVENTION—*Use of by Licensee Pending Application for Letters Patent—Effect on After use.*

A license to use an invention, for which proper application for letters patent has been filed, may be given before the patent has been granted, and, if acted upon by applying the invention in the manufacture of articles, will avail to protect the licensee in its use afterwards.    (p. 11).

2.    SAME—*Rights of Applicant for Letters Patent to Contract Use of to Another so as to Protect Latter in its use After Patent is Formally Granted.*

One who has applied for letters patent on a useful invention has an inchoate right of property in such invention on which he can base a contract with another person for license to that other person to use the invention in the manufacture of articles of commerce pending the application for letters patent, and whereby the licensee will be protected in such manufacture after the patent is formally granted.    (p. 11).

89 W. Va.

3.  SAME—*License to Use Pending Application for Letters Patent as Consideration for Contract Under which a Royalty is Paid Inventor.*

    A license to use an invention, pending the application for letters patent thereon, is sufficient consideration for a contract between the inventor and the licensee whereby articles of commerce may be manufactured by the licensee and placed upon the market on a royalty basis to the inventor. The protection of the licensee in the use of the invention when patented enters into and forms a part of the consideration for such contract. Benefits to be derived by each party to a contract furnishes a sufficient consideration for it. (p. 12).

4.  SET-OFF—*Embodying Contract Between Applicant for Letters Patent and Licensee Proper in Case in which Damages Accruing by Breach of Such Contract is a Proper Set-Off to Obligation Sued Upon.*

    A special plea of set-off embodying such contract should be permitted to be filed in a case in which the damages accruing by a breach of such contract is a proper set-off to the obligation sued upon; the objection to the plea being that the contract is void for want of consideration. (p. 15).

Case certified from Circuit Court, Wood County.

Action by the Cook Pottery Company against J. H. Parker & Son. Rulings permitting the filing of special pleas of set-off and of a notice of recoupment tendered by defendants, certified for review.

*Affirmed.*

*C. D. Merrick,* for plaintiff.

*H. P. Camden* and *Marshall & Forrer,* for defendants.

LIVELY, JUDGE:

The action of the circuit court in overruling demurrers to two special pleas of set-off, and in overruling objections of the plaintiff to the notice of recoupment filed by the defendants, and in refusing to strike the same out, has been certified to this court for review.

The case was before this court on somewhat similar questions raised by this record, and is reported as *Pottery Company* v. *Parker,* 86 W. Va. 580.

Plaintiff sued defendants on certain notes aggregating $5,-170.00 and defendants tendered two special pleas of set-off

designated as special plea No. 1 and special plea No. 2 and a notice of recoupment.    The circuit court refused to permit either of the special pleas or the notice of recoupment to be filed, and that action and holding was formerly certified to this court, and it was held here that special plea No. 1 and the notice of recoupment should have been permitted to be filed, thus reversing the circuit court; but the action of the lower court in rejecting special plea No. 2 was affirmed, as will be seen from an inspection of the reported case above referred to.

Now defendants have tendered two more special pleas of set-off designated as special pleas No. 3 and No. 4, respectively, and also another notice of recoupment marked No. 2, both of which special pleas and the notice of recoupment No. 2 were permitted to be filed, and demurrers of the plaintiff thereto and motion to strike out overruled and refused.    It is this disposition of the pleas and notice by the circuit court which is now here for review.    In plea No. 1, heretofore held to be proper and directed to be filed, the defendants relied on a contract between them and plaintiff, made the 8th of October, 1915, whereby, in consideration of the defendants agreeing to permit plaintiffs to manufacture the "Wedge Knob" with the use, in the manufacture thereof, of the "Nailit Knob," a device then "owned and controlled" by defendants, the plaintiff agreed to manufacture and sell exclusively to defendants the "Wedge Knob" at the price of $5.65 per thousand plus a stipulated price for ten penny nails and leather washers used in the manufacture; and that the plaintiff was to add to the price aforesaid 24 cents per thousand to be credited on the books of the plaintiff in reduction of indebtedness of the defendants to plaintiff; and that said agreement was to continue for 5 years, and as long thereafter as either party did not violate the provisions of the contract, and then to be cancelled at the option of the party who did not violate it.    The breach averred and set-off relied upon is that plaintiff violated this contract by manufacturing and selling directly to other persons large quantities of said manufactured article, which, at the rate of 24 cents per thousand, the sum per thousand to which defendants were en-

titled by virtue of said contract, amounted to the sum of $7,-
200.00, and which they were entitled to receive from plain-
tiff, and claimed set-off to that amount against the notes sued
on.    Plea No. 3, now in controversy, is substantially the
same as plea No. 1.    It avers the same matter, but goes more
into detail.    It alleges at length *how* it "owned and con-
trolled" the device known as the "Nailit Knob."    It also
alleges that the contract of October 8, 1915, on which the pleas
are based, was in writing under seal and makes profert there-
of.    This contract is brought into the record by the craving
of oyer thereof by the plaintiff.    The amount claimed as and
for the breach of the contract is stated at the sum of $10,-
000.00, whereas plea No. 1 alleges it to be $7,200.00.    This
additional sum is evidently intended to cover the period be-
tween the dates of the filing of the two pleas.    The only other
difference is that plea No. 3 alleges that the indebtedness of
the defendants to plaintiff on which the 24 cents per thousand
for the manufactured knobs was to be credited is the same
indebtedness on which plaintiff is now suing.    The con-
trolling ownership of the "Nailit Knob" device    alleged in
plea No. 1 is described in extenso by plea No. 3.    It is aver-
red, substantially, that William Morrill Parker, one of the de-
fendants, in January, 1915, filed application for letters patent
in the U. S. Patent Office for the device known as the "Nailit
Knob" and thereafter it was controlled by the defendants;
that in May, 1915, the plaintiff, learning of this device, en-
tered into negotiations with defendants culminating in the
contract for the use of this device in the manufacture of the
"Wedge Knob" then being manufactured by plaintiff, on a
royalty basis; that defendants ascertained, after said con-
tract had been made, that one A. H. Fargo had also applied
for letters patent on a device similar to that of the "Nailit
Knob," and, in   order to protect the plaintiff in the license
granted it by defendant in the contract of October 8, 1915,
acquired, by writing under seal from Fargo, sole and ex-
clusive license to use said invention, said sole and exclusive
license being taken by J. H. Parker and Son, incorporated,
but that defendants J. H. Parker and Son should have the
benefit of the same in order to protect the plaintiff in the

license granted to it by the contract of October 8, 1915; that afterwards on February 3, 1920 letters patent for said invention were duly issued to an assignee of Fargo, who afterwards on April 28, 1920 granted to J. H. Parker and Son, Inc., the exclusive right and license to make, use and sell devices embodying the invention, throughout the United States and territories thereof, for the full life of the patent; and that defendants, by virtue thereof, and by the application filed by W. M. Parker for letters patent, have always controlled the right to manufacture and sell the ''Nailit Knob,'' a name used to designate any two piece knob for electrical work assembled with a nail and fastened together by means of a washer or swedge or other projection on the lower part of the knob.

Plaintiff strenuously contends that the plea is bad and demurrer thereto should have been sustained, because, as counsel avers, this extended description of the ownership and control of the ''Nailit Knob'' device in fact shows that defendants did not have ownership and control thereof; and that therefore they had no right to make the use of ''Nailit Knob'' device the basis or consideration of the contract of October 8, 1915, and that said contract was therefore without consideration and void; in other words, that pending an application for letters patent, the applicant has no such ownership or control of the device sought to be patented as would give him the right to license or permit another to use it. It is claimed that plaintiff already had full power and right to use this device in the manufacture of its ''Wedge Knob,'' pending defendants' application for patent thereon, and that when it signed this contract, although under seal, there was no basis for its so doing, no consideration therefor. An inventor has an inchoate right of property in an invention pending his application for patent, with which he may deal as an article of property. *Gayler* v. *Wilder,* 10 Howard 477; *Richardson* v. *Essex Machine Co.,* 207 Mass. 219. A license to use a device for which application for letters patent is pending may be given, and if acted upon and the device used by the licensee in the manufacture of articles in which the invention is used, it will avail to protect the licensee in the

use thereof after the invention is patented. *Burton* v. *Burton Stock Car Co.,* 171 Mass. 437. While it may be true that pending an application for a patent the applicant has no exclusive right to its use, which doctrine is laid down in *Gayler* v. *Wilder, supra;* and *Marsh* v. *Nichols,* 128 U. S. 612; yet the use by another of the device sought to be patented, pending the application, ceases when the patent has been granted. *Evans* v. *Jordan,* 9 Cranch 199. If the allegation of this plea be true, then the inducement and consideration to the Cook Pottery Co. for the contract of October 8, 1915 was to obtain the right to use this device not only pending the application but to be protected in its use after the device had been invented. The contract is a sealed instrument and implies consideration. Moreover, it may be that the payment of the indebtedness mentioned in the plea as that sued on is consideration moving the plaintiff to enter into the contract by which the royalty to Parker of 24 cents per thousand on the articles manufactured and sold was to be credited on its books against said indebtedness. If there be consideration, however small, especially where the agreement is under seal and the parties have operated thereunder, it will be sufficient to relieve the contract against a failure for want of consideration. It is not for the courts to control the amount of consideration in contracts. The parties must agree upon that.

It is alleged that the contract does not in terms grant a license or permit the plaintiff to manufacture the assembled knob by using the ''Nailit Knob'', and therefore is at variance with the plea. The contract must be considered in the light of the allegations of the plea. If there be a difference in the construction of the contract on this point, and it be necessary to construe the contract upon its introduction on the trial, presuming its true intent and meaning cannot be ascertained from the instrument itself, possibly evidence *aliunde* would be permitted to show the intention of the parties. That question does not properly arise here.

It is asserted that the contract is void because in restraint of trade. Without reviewing the authorities on the question of the right of a patentee to put on the market articles

manufactured under his invention with restrictions as to price and the like, or whether he, having a monopoly in his invention and complete property right therein, can refuse to permit the use of his invention except under stringent and monopolistic restrictions, it is sufficient to say that the same objection of restraint of trade would apply to plea No. 1 which this court on the former certification held to be good and permitted to be filed.    It is a closed question so far as this case is now concerned.    *Campbell* v. *Campbell,* 22 Gratt. 649.

The substance of the objection to plea No. 3 in relation to the allegations therein concerning the application and issuance of the Fargo patent, and the purchase by J. M. Parker and Son, incorporated, of the exclusive right and license to make, use and sell devices embodying the invention throughout the states and territories of the United States, is that the plaintiff is not protected thereby in the manufacture of the particular article set out in the contract.    The plea in substance alleges that defendants have caused the purchase of the Fargo invention with the express intention and purpose of protecting the right given by them to plaintiff in the contract for the manufacture of the two piece assembled knob, and to fully protect that contract and all the rights of the plaintiff thereunder, and that by virtue of an understanding and agreement with J. M. Parker and Son, incorporated, a corporation owned and controlled by defendants, they have fully assured and conserved to plaintiff the integrity of the contract.    Whether or not this can be supported by the evidence is a question for jury determination.    It does not render the plea bad on demurrer.

Plea No. 4 is similar to plea No. 3, and is objected to for the same reasons urged against plea No. 3. The only material difference is that it alleges an additional sum of $5,000.00 accruing to defendants by virtue of the breach between time of the institution of the suit and the 8th day of October, 1920, the time of the expiration of the contract.    We can see no objection to this plea because it covers a period of the breach possibly not covered by pleas Nos. 1 or 3.

Notice of recoupment No. 2 is the same as notice of recoup-

ment No. 1 heretofore held to be good and directed to be filed by this court.    The only difference therein is the additional allegation that defendants had, prior to March 14, 1916, built up a large and profitable business in selling   the electrical porcelain products manufactured by the plaintiff, which had become permanent, fixed and established, and brought about by great expense in time, labor and money, and was then resulting in sales averaging $25,000.00 per year on which defendants, by reason of their selling agreement with plaintiff, were receiving commissions of 10%, amounting to an average of $2,500.00 a year, of all of which plaintiff had notice.    The loss and damage claimed in this notice,   occasioned by the breach, is alleged at $12,500.00, whereas in recoupment No. 1, filed, it is alleged to be $10,000.00.    It would serve no useful purpose (except convenience) to set out fully notice of recoupment No. 1, heretofore filed.    It can be seen by inspection of the reported case in 86 W. Va. at p. 580.    The first objection to notice of recoupment No. 2 is that the alleged agreement is without consideration; that the agreement to pay the debts owing by defendants to plaintiff, therein set out, was no consideration, because defendants were already bound to pay them.    The notice avers that the consideration for continuing the selling agreement was that defendants would not be discharged from paying them by passing through bankruptcy proceedings, which they were then about to invoke. They had no assets, and, if forced into bankruptcy, could pay their creditors nothing.    It was to save plaintiff's claims now sued on that the agreement was made, as alleged in the notice.    We think this a sufficient consideration.    It was tacitly so determined upon the former hearing.    Whatever is contained in the record on appeal is supposed to have been passed on, and whatever is passed on by this court or might have been passed upon on consideration of the record is concluded and settled.    It is the law of the case.    *Krise* v. *Ryan*, 90 Va. 711.

Another objection is that the notice of recoupment alleges no time in which the contract would run, no date for its termination, and therefore plaintiff could terminate the agreement at any time, and that it did on March 14, 1916, after

the agreement had continued for two years.    The notice says that the time for the payment of the debts was to be extended and the debts carried by plaintiff until they could be fully paid by the application of one half the commissions provided for in the agreement, to the payment thereof, which  debts were and are the debts now sued on.    This would make the time for the running of the contract indefinite, depending upon when the debts would be paid under that arrangement.    A part performance of this contract is alleged to have been made by which about $1500.00 had been actually paid.    It is apparent that a reasonable time for the running of the contract was contemplated by the parties, and what would be a reasonable time is for the court and jury to determine under all the facts and circumstances.    We do not think the notice is bad for that reason.

No objection is urged by counsel for plaintiff against the new matter set out in notice of recoupment No. 2 relating to the termination of defendants' established trade in the porcelain products manufactured by plaintiff, by reason of the breach of the alleged agreement by plaintiff; and it will not be considered and passed upon.

We affirm the action of the circuit court in permitting special pleas of set-off Nos. 3 and 4, and notice of recoupment No. 2 to be filed, and in overruling the demurrers to said pleas, and in refusing to strike out the notice of recoupment No. 2.

*Affirmed.*