This action was instituted by the plaintiff to recover damages on account of defendants' interference with his right to the use of certain patents, covering improved appliances in the manufacture of hosiery, invented by him, and for compensation for the use of his invention by defendants in their hosiery mill.
The pleadings consisted of complaint, answer and reply. At the hearing defendants interposed demurrer ore tenus on the ground that the plaintiff's complaint and reply failed to state a cause of action, and that on the face of these pleadings the court was without jurisdiction. The demurrer was sustained. Plaintiff's appeal from this disposition of the case requires examination of plaintiff's complaint, and of his reply in response to defendants' answer, as these pleadings relate to the questions raised by the demurrer.
The pertinent allegations of the complaint may be stated as follows: During the year 1939, while plaintiff was an employee in the hosiery mill in Hickory, North Carolina, owned and operated by the defendants, Ernest E. and Clarence L. Whisnant, he invented an appliance or *Page 497 
machine for putting stripes in men's hosiery while in process of manufacture on circular knitting machines. Application for patent was filed in U.S. Patent Office 7 December, 1939, and patent #2,237,270 was issued in 1940. Subsequently plaintiff devised certain improvements on the invention, for which patent #2,330,269 was issued and granted to plaintiff and Osben D. Hunt (superintendent in defendants' mill), as patentees, with an assignment of an interest therein to the two defendants. It was alleged, however, that the defendants were merely licensees, and that the use of the patented appliances was restricted to defendants' plant in Hickory. Plaintiff alleged that he was the sole inventor, and that the naming of Hunt as co-patentee was procured by defendants as result of an unlawful conspiracy on their part with Hunt in order that defendants might control the patent, and that immediately after the last patent was issued Hunt assigned his interest in the patent to the defendants, and that defendants have continuously used the appliance invented by plaintiff in their mill. Plaintiff alleged that he had demanded compensation for use of the machines invented by him but only received nominal and grossly inadequate sums therefor; that the patented device reduced the cost of manufacturing hose to the extent of 15c and 20c per dozen, and that defendants have used plaintiff's invention in the manufacture and sale of 1,500,000 dozen pairs of hose.
Plaintiff further alleged that he had made numerous efforts to make and distribute said attachments for use in various and sundry hosiery mills in North Carolina, but that on each occasion that defendants "have gone to the party approached by plaintiff and threatened, either directly or indirectly, to institute proceedings to `protect their interest,' or to institute proceedings to prevent the use of this plaintiff's invention by himself or any other person," and, further, that when plaintiff was considering a proposition with parties in Hickory for the use of these attachments on a partnership basis defendants approached said parties with result they canceled the proposition; that defendants by threats to sue the proprietors of machine shop if they attempted to manufacture any of these appliances, have prevented plaintiff from having any of the patented devices made; that such interference has continued over a period of two years and defendants have consistently prevented this plaintiff from making, using or selling the appliances invented by him; that defendants have appropriated plaintiff's invention to their exclusive use, installed the appliances so patented in their mill, and forbidden the use or sale by plaintiff of any of said appliances. For this interference with the use of his patent plaintiff alleges he has suffered damages to the extent of $150,000. He further alleges that defendants have greatly prospered by the use of his invention, and that he is entitled to recover for royalties on the use of his invention in the amount of $75,000. *Page 498 
The defendants in their answer admit the issuance of the patents set out in the complaint, but allege that a contract and assignment, dated 3 October, 1939, was entered into by and between the plaintiff and Hunt, parties of the one part, and the defendants, of the other part, which contained stipulations and agreements that plaintiff and Hunt thereby assigned and sold to the defendants one-half interest in the invention for which the parties of the first part were about to apply for letters patent, and that each of the parties thereby became entitled to one-fourth interest in said invention, including letters patent to be issued, together with all improvements and subsequent patents on said invention; that it was further stipulated in the contract that defendants be granted license to use the invention in their mill as a factory right without charge for the use of the invention; that the invention and patents should not be sold, assigned, leased or licensed, or any interest disposed of without unanimous consent of the four parties, and that in event of sale or license the money derived should be equally divided. The agreement contained the further provision that the invention and any and all patents granted thereon "shall not be used by anyone except Ernest E. Whisnant and Clarence L. Whisnant at their mill in Hickory, North Carolina, except by the written consent of all parties to this agreement." This was signed by plaintiff, Hunt and the two defendants.
Defendants' answer further set out that on 5 December, 1939, and again on 31 December, 1940, plaintiff and Hunt executed written assignments to each of the defendants of a one-fourth interest in the invention. These assignments were recorded in U.S. Patent Office. It was further alleged that on 7 June, 1943, Hunt executed written assignment of his one-fourth interest to the defendants, and appended to this assignment was the written consent signed by plaintiff.
To the defendants' answer plaintiff filed reply again alleging that he was the sole inventor of the device patented, and that the naming of Hunt as co-patentee was caused by the defendants in furtherance of the conspiracy alleged in the complaint. He admits signing the contract alleged in the answer, but alleges this was done under coercion, without consideration and in furtherance of a conspiracy between defendants and Hunt to defraud him of his rights and of the rewards due him from his invention. He further alleges the contract was illegal and void "for the reason that same is in restraint of trade and contrary to the Federal statutes, and particularly the Sherman anti-trust statute." Plaintiff admits signing the assignments to the defendants set out in the answer, but alleges they were executed in furtherance of the unlawful conspiracy as alleged, were without consideration, and that at the time said assignments were executed there was a contemporary oral agreement with the *Page 499 
defendants that they would pay him ample royalties upon the use of his inventions in the event they proved practical.
Plaintiff admits the patent was issued in the name of Hunt and himself, but not to defendants as co-patentees, "the same having been assigned to them as assignees of a one-fourth undivided interest each and by agreement said interest was to be used in their mill at Hickory," and that their interest is only that of licensees for the use of the invention in their plant. Plaintiff again alleges the contract and the assignments to defendants were executed under coercion, without consideration, and that the contract relied on by defendants was void as being in restraint of trade. He alleges that the defendants have installed 104 machines equipped with plaintiff's invention without compensation to him, and have interfered with plaintiff's use of his invention, and prevented him from making, using or vending the patented devices. His prayer for relief is that he recover $150,000 damages for wrongful interference, and $75,000 royalties.
From judgment sustaining the demurrer and dismissing the action, plaintiff appealed.
The sufficiency of the plaintiff's pleadings to constitute a cause of action was challenged by the demurrer interposed by defendants upon two grounds: (1) that the cause of action attempted to be set up was one arising under the Patent Laws of the United States, and therefore cognizable only in the Federal Courts, and (2) that in any event plaintiff had failed to allege sufficient facts to constitute a cause of action. The ruling of the court below in entering judgment that the demurrer be sustained requires consideration of both grounds upon which the demurrer was based.
1. By Art. I, sec. 8, of the Constitution of the United States the Federal Government was granted power "to promote the progress of science and useful arts, by securing for limited times to . . . inventors the exclusive right to their . . . discoveries." In the exercise of this power the Congress has given to the Federal Courts exclusive jurisdiction of "all cases arising under the patent-right laws of the United States." 28 U.S.C.A., sec. 371, 41 (7). Only a Federal Court has jurisdiction to consider an action involving the construction of the patent laws, the validity of a patent, or questions of infringement. Gen. Electric Co.v. Marvel Match Co., 287 U.S. 430; Odell v. Farnsworth,250 U.S. 501; 40 Am. Jur., 652. However, to constitute a suit under the patent laws "the plaintiff must set up some right, title or *Page 500 
interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction or sustained by the opposite construction of these laws." Pratt v. Paris Gaslight Co.,168 U.S. 255 (259); Odell v. Farnsworth, 250 U.S. 501; Miller Co.v. Beagen, 293 Mass. 54. But not every case involving rights conferred by the patent laws is beyond the jurisdiction of state courts. When the action is brought on a contract, or in tort, with respect to the exercise of a patent right the state court has jurisdiction, Henry v. Dick Co., 224 U.S. 1; Briggsv. United Shoe Machinery Co., 239 U.S. 48; Independent Wireless Teleg.Co. v. Radio Corp., 269 U.S. 459; Becher v. Contoure Laboratories,279 U.S. 391; or to enforce the payment of royalties or license fees. 40 Am. Jur., 653. And a suit to enforce or set aside a contract though connected with a patent is not a case arising under the patent laws of the United States. Excelsior Wooden Pipe Co. v. Pacific BridgeCo., 185 U.S. 282.
In the application of these principles to the plaintiff's pleadings in the case at bar, it may be observed that if plaintiff's action be regarded as bottomed upon the allegation that others were fraudulently, or as result of a conspiracy on the part of defendants, caused to be named in the letters-patent as joint patentees when in fact the plaintiff was the sole inventor, and relief were sought on that ground, it would undoubtedly set up a cause of action under the patent laws of the United States, and involve the validity of the patent. Crown Die Tool Co. v. Nye,261 U.S. 24; Hise v. Grasty, 159 Va. 535, 166 S.E. 576. It is said in Walker on Patents, 404: "If several persons obtained a joint patent for what was invented solely by one of them, that patent is void."
But giving the plaintiff's pleadings the liberal construction required as against a demurrer, Blackmore v. Winders, 144 N.C. 212, 56 S.E. 874, it is apparent the allegations as to conspiracy and fraud in connection with securing the patent are incidental and by way of inducement to the gravamen of his complaint, which is that plaintiff's rights under the patent to make use and vend the patented appliances have been tortiously interfered with by the defendants Whisnant to plaintiff's damage, and that he is entitled to compensation or royalties upon the use of the patented devices by the defendants as licensees, in accordance with defendants' alleged agreement to pay therefor. These being the grounds of suit and upon which he seeks relief in damages and for collection of royalties, we conclude that the court was not without jurisdiction, and that demurrer on this ground cannot be sustained. The validity of the patent is not challenged. The plaintiff's action is based upon its validity and upon his right to use his invention without interference. The real issue in this case does not depend upon the construction or administration of the Federal Patent statutes. *Page 501 
In Luckett v. Delpark, 270 U.S., a suit by the owner of a patent against licensee for damages for suppression of the patented article, and for royalties, and for cancellation of agreements in relation to the patent, was held not within the jurisdiction of U.S. Courts. In delivering the opinion of the Court, Chief Justice Taft said: "It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent is not a suit under the patent laws of the United States, and cannot be maintained in a Federal Court as such," citing numerous cases.
In Kabbes v. Philip Carey Mfg. Co., 63 F. (2), 255, where plaintiff, one of two co-patentees, sought to enjoin defendant, former employer, from making and selling the patented article on the ground that plaintiff's assignment to the defendant of his interest was invalid, the case was dismissed for that the Federal Court had no jurisdiction under the patent laws, both parties being residents of the same state. To the same effect is the holding in Globe Steel Co. v. National Metal Co., 101 F. (2), 489.
"Whenever the rights of plaintiff depend upon contract obligations which courts of general equity jurisdiction may enforce, or for breach of which courts of common law cognizance may award damages, the mere fact that a patent is incidentally or collaterally related to the controversy, does not oust the state courts of jurisdiction." Wise v. Tube Bending Machine Co.,194 N.Y. 272.
State courts have jurisdiction to prevent or repair breaches in contractual relations between owners of patent rights, or to award damages for tortious conduct on the part of one toward his co-owner with respect to such rights. Miller Co. v. Beagen, 293 Mass. 54.
2. Considering then that the plaintiff's pleadings have attempted to set up a cause of action which is within the jurisdiction of the state court, the demurrer next questions the sufficiency of the facts pleaded to entitle plaintiff to maintain his action.
In this phase of the case, it is apparent that the plaintiff is confronted with a barrier which he must surmount in order to proceed with his action. In his reply he admits the execution of the contract and assignments set out in the answer. In the contract it is specifically provided that plaintiff's interest in the patent is only one-fourth, and that the two defendants are co-owners to the extent of one-fourth interest each; that to the defendants is given the right to use the invention in their plant at Hickory without charge; and that the invention and letters patent issued thereon shall not be used by anyone other than the defendants in their mill, "except by the written consent of all the parties to this agreement." While this contract was signed by plaintiff before the *Page 502 
patent was issued, it was entered into in contemplation of application for and issuance of letters patent on plaintiff's invention, and upon issuance of the patent and subsequent assignments would be held binding and enforceable, if in other respects valid. McGee v. Frohman, 207 N.C. 475,177 S.E. 327; U.S. v. Dubilier Condenser Corp., 289 U.S. 178; CookPottery Co. v. Parker, 89 W. Va. 7, 109 S.E. 744. Since this contract denies the right to recover royalties, and grants to defendants power to prevent plaintiff's use of the invention except by defendants' consent, if this contract is upheld plaintiff will not be able to maintain his action for the causes set out in his pleadings. U.S. v. Gen. Electric Co.,272 U.S. 476.
In his reply the plaintiff seeks to avoid the effect of the contract on three grounds: (a) that his execution of this paper was procured by the coercion of the defendants; (b) that the contract is rendered null and void by the Federal statute known as the Sherman anti-trust laws, or by the North Carolina State statutes, or under the common law rule against contracts in restraint of trade; and (c) that the execution of the contract on his part was without consideration, and hence unenforceable as to him.
(a) An examination of plaintiff's pleadings fails to reveal any facts upon which coercion may be predicated, and the assertion to this effect may be regarded merely as the conclusion of the pleader which is not admitted by the demurrer. There is no allegation of fraud.
(b) It is contended by plaintiff that the provision in the contract excluding the plaintiff and all others from use of the patent violates the Federal anti-trust statutes, tends to create a monopoly and is in restraint of trade, and hence should be held unenforceable. As all the parties here are citizens and residents of North Carolina, and the execution of the contract and all the transactions thereunder and all the acts complained of took place in this State, the Federal statutes have no application. Nor may the provisions in a contract excluding others from use of a patent right be regarded as in restraint of trade. Patent laws confer upon the owners of a patent the right to exclude others from making, using or selling the patented invention without their consent. One of the purposes of the patent laws is to exclude others from the use of the patented article, and to preserve to the patentee and his assigns rights in the invention to the exclusion of all others. In Maxwell v. Construction Co., 200 N.C. 500,157 S.E. 606, it was said: "The patent is the instrumentality by which the U.S. confers upon the patentee, his heirs and assigns the right to the exclusive use of his invention or discovery, for a limited time"; andJustice Connor in delivering the the opinion of the Court quoted fromRockwood v. Commissioners, 257 Mass. 572, as follows: "Letters patent issued by the United States give to the patentee *Page 503 
a right of monopoly in the invention, and with this right the State cannot interfere." The Massachusetts case was affirmed by the Supreme Court of United States in Long, Commissioner v. Rockwood, 277 U.S. 145. This principle was stated in Bement Son v. Harrow Co., 186 U.S. 70, as follows: "The very object of these laws is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee for the right to manufacture or use or sell the article, will be upheld by the Courts. The fact that the conditions in the contract keep up the monopoly or fix prices does not render them illegal." And from United States v. United Shoe Machinery Co., 247 U.S. 32, we quote: "Of course there is restraint in a patent. Its strength is in the restraint, the right to exclude others from the use of the invention absolutely or on the terms the patentee chooses to impose. This strength is the compensation which the law grants for the exercise of invention. Its exertion within the field covered by the patent law is not an offense against the Anti-Trust Act." "It is a grant of the right to exclude others from using it." Special Equipment Co. v. Coe, 323 U.S. 697. Only when the patentee uses his patent to enlarge the patent monopoly beyond the grant would the anti-monopoly statutes apply. Ethyl Gas Corp. v. U.S.,309 U.S. 459; Special Equipment Co. v. Coe, supra. Or where as result of conspiracy among patent holders, patent rights are used to create monopoly in a particular industry. Hartfort-Empire Co. v. U.S., 323 U.S. 386.
In Becton v. Eisele, 86 F. (2), it was said: "That the anti-trust laws do not embrace nor include contracts entered into in the legitimate exercise of rights conferred under the patent laws has been established in many cases," citing Bement Sons v. Harrow Co., 186 U.S. 70; U.S. v.United Shoe Mach. Co., 247 U.S. 32; U.S. v. Gen. Electric Co.,272 U.S. 476. Anti-trust statutes do not purport to curtail the patent monopoly. International Bus Mach. Corp. v. U.S., 298 U.S. 131.
"A covenant by the assignor of a patent that he will not himself make, use or sell the patented article is undoubtedly valid because the Act of Congress which created the monopoly expressly authorizes it to be assigned as a whole." Transportation Co. v. Pullman, 139 U.S. 24 (53).
While a patent right, strictly speaking, does not create a monopoly as pointed out by Mr. Justice Roberts in U.S. v. Dubilier Condenser Corp.,289 U.S. 178, since it does not deprive the public of any right it previously had, restraint is inherent in a patent since it confers the right to exclude others.
The owner of a patent may sell his patent and lawfully agree not to compete with his vendee and to exclude himself from its use. Such a contract would not be invalid under the anti-trust statutes. Special *Page 504 Equipment Co. v. Coe, supra; 2 Page Contracts, sec. 826; 48 C. J., 268; 2 Walker on Patents, 1401. A contract that assignee should have the exclusive right to manufacture and sell the appliance is equivalent to a sale of the exclusive right and not void under the Sherman Act. Bement Sons v. HarrowCo., supra; U.S. v. Gen. Electric Co., 272 U.S. 476; Garfield v. WesternElectric Co., 298 F., 659. The patentee may assign to another an undivided share of his exclusive right to use, make and sell the patented device, to the exclusion of himself. Unless reserved, all his rights to the patent pass to his assignee. "The franchise which a patent grants consists altogether in the right to exclude." Becton v. Eisele, supra; United ShoeMach. Corp. v. U.S., 258 U.S. 451; Waterman v. Mackenzie,138 U.S. 252. A contrary view was expressed in Blount v. Yale TowneMfg. Co., 166 F., 555.
As was said in Copeland v. Eaton, 209 Mass. 139, "This (a patent) is a property right of a peculiar nature, with attributes which differentiate it from all other classes of property." The distinction between assignees and licensees is pointed out in Wildes v. Nelson, 154 N.C. 590,70 S.E. 940; Waterman v. Mackenzie, supra.
While Mr. Barnett in his work on Patent Property and Anti-Monopoly Laws, pages 125 and 126, questions the right of one joint owner of a patent to make an agreement with a co-owner to limit competition between them, as being in restraint of trade, citing an unreported case from a U.S. District Court, we do not perceive that the contract under consideration gives rise to monopoly or to a restraint which was not inherent in the patent grant, and in the right to assign a patent in whole or in part conferred by the Federal Statute, sec. 47 of U.S. Code, title 35.
Restraint for a limited time being inherent in patent laws, under the authorities cited, we do not think the plaintiff can avoid the obligation of his contract on the ground that it was illegal and unenforceable.
(c) Was the execution of the contract relied on by defendants without consideration? Undoubtedly joint owners of a patent are competent to contract with each other with respect to the exercise of the exclusive rights conferred by the patent, Newark Knitting Co. v. Marsh,57 N.J. Law., 36, or to assign their interest absolutely or upon condition, and to divest themselves of rights with respect to the patent, Russell v. BostonCard Index Co., 276 F., 4. But executory contracts between co-owners, or those having an interest in patent rights, are subject to the same requirements and rules of law as other contracts. Consideration is an essential element of a simple contract, and want of consideration constitutes legal excuse for nonperformance of an executory promise. Swift Co. v. Aydlett, 192 N.C. 330, 135 S.E. 141; 12 Am. Jur., 565925. The agreement on the part of the plaintiff to the effect that only the *Page 505 
defendants could make use of the invention and patent rights, and that plaintiff could not do so without the written consent of all parties, including the defendants, must have been supported by a consideration in order to be enforceable against the plaintiff. 17 C. J. S., 421, 422;Planters National Bank v. Heflin, 166 Va. 166, 164 S.E. 216.
The contract recites as consideration the furnishing of necessary expenses incurred in making the invention and to be incurred in securing patent, and in their answer defendants allege that plaintiff and Hunt were employed to do experimental work for the purpose of devising or inventing appliances useful in the manufacture of hosiery, and that defendants provided the materials and facilities for that purpose; and in addition that defendants incurred expense in defending a patent infringement suit and in the purchase of right to use a similar patented device.
But the plaintiff in his reply denies each of the allegations in the answer tending to show consideration for the execution of the contract, though he admits defendants paid the patent fees and a small amount for another patent, and charged plaintiff his pro rata part therefor. Payment of patent fees apparently may be regarded as consideration for assignment to the defendants of an interest in the patent. Since the defendants were owners of one-half interest in the patent, and now own three-fourths, expense of defending their joint patent rights would hardly be considered as consideration for the execution of a contract in 1939 by which plaintiff purported to divest himself of all right to the fruits of his invention. Plaintiff also alleges that defendants at one time made a small increase in his salary for a few weeks, and subsequent to the execution of the assignments discharged him.
From an examination of the plaintiff's pleadings, in the light of the rule requiring that in the construction of pleadings every reasonable intendment and presumption be made in favor of the pleader (Blackmore v.Winders, supra; G.S., 1-151), we conclude that the plaintiff has sufficiently alleged want of consideration for the execution of those provisions of the contract referred to, and that the defendants' contention that he is debarred by this contract from maintaining his action for the causes alleged in his complaint cannot be sustained. Under the pleadings here we think the provisions of the contract should not be held to preclude the plaintiff from the use of his invention in which he still retains an interest, and that his action for damages against the defendants for wrongful interference with the rights conferred by the patent may not be dismissed, if he has otherwise pleaded sufficient facts to show an actionable wrong.
3. Are the allegations in plaintiff's pleadings sufficient to maintain an action for wrongful interference with plaintiff's rights in the premises? *Page 506 
In Haskins v. Royster, 70 N.C. 601 [70 N.C. 600], Justice Rodman, speaking for the Court, quotes at some length from Walker v. Cronin,107 Mass. 555, from which we select as appropriate here this statement of a legal principle: "Every one has right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance." The right to make contracts is both a liberty and a property right. Morris v. Holshouser,220 N.C. 293, 17 S.E.2d 115; Stephens v. Hicks, 156 N.C. 239,72 S.E. 313. We think the general rule prevails that unlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of the defendant's own rights, but with design to injure the plaintiff, or gaining some advantage at his expense. 30 Am. Jur., 70, 83; Angle v. Railway Co., 151 U.S. 1; Miles Med. Co. v.Parks, 220 U.S. 373 (394). In Kirby v. Reynolds, 212 N.C. 271,193 S.E. 412, Justice Clarkson quotes from 15 R. C. L., 68, as follows: "As a general proposition any interference with free exercise of another's trade or occupation, or means of livelihood, by preventing people by force, threats or intimidation from trading with, working for, or continuing him in their employment is unlawful." In Kamm v. Flink, 113 N.J.L. 582, 99 A.L.R., 1, it was said: "Maliciously inducing a person not to enter into a contract with another, which he would otherwise have entered into, is actionable if damage results." The word "malicious" used in referring to malicious interference with formation of a contract does not import ill will, but refers to an interference with design of injury to plaintiff or gaining some advantage at his expense. Stanford v.Grocery Co., 143 N.C. 419, 55 S.E. 815; Downing v. Stone,152 N.C. 525, 68 S.E. 9; Stancill v. Underwood, 188 N.C. 475,124 S.E. 845; Betts v. Jones, 208 N.C. 410, 181 S.E. 334; Bittermanv. Railroad, 207 U.S. 205. In Lewis v. Bloede, 202 F., 7, in an opinion by District Judge Connor (former Justice of this Court) it was held that an action would lie for a wrongful and unjustifiable interference, knowingly and intentionally interposed to prevent the formation of a contract which but for such interference would have been formed. Skene v. Carayanis, 103 Conn. 708. See cases collected in Annotations, 99 A.L.R., 18. While this principle has been held not broad enough in its application to authorize action for inducing a third person to break a single contract with plaintiff, the consequences being a broken contract for which the party has his remedy by suing upon it, Biggers v. Matthews, 147 N.C. 299,61 S.E. 55; Swain v. Johnson, 151 N.C. 93, 65 S.E. 619; Elvington v.Shingle Co., 191 N.C. 515, 132 S.E. 274; Holder v. Bank, 208 N.C. 38, *Page 507 178 S.E. 861, we think the facts alleged in plaintiff's pleadings are sufficient to set out an actionable wrong. He alleges in substance that defendants not only appropriated his patent to their use in their mill, but that they consistently and continuously prevented his making contracts for the exercise of his rights in relation thereto, this continuing over a period of two years; and preventing (1) his sale or licensing the use of his invention in various other mills as he had a right as owner of an undivided interest therein to do; (2) his using it himself in a mill where he was negotiating with another for its use on a partnership basis, and (3) his contract for the manufacture for him of the patented appliances. He alleges that this was done by persistent threats of suit which caused the parties with whom he had begun negotiations and who would otherwise have contracted for license, use or manufacture, to decline to deal with him.
While no misrepresentations are alleged nor force used, it is thought allegations in the complaint and reply tend to show that the persistence in the activities of the defendants to threaten with suits all those with whom he negotiated for the manufacture, sale and use of a valuable patent right has effectually prevented the plaintiff from exercising his right and has wrongfully interfered with his freedom of contract and use of his trade and occupation, and that this was done without justification or legal excuse and for the purpose and design of depriving him of his rights in the patent and of gaining for themselves the exclusive use of this valuable invention at his expense. He avers that he has been met at every turn by the wrongful activities of the defendants, and finds himself helpless to obtain any of the fruits of his invention.
4. While the contract relied on by defendants provided that defendants should use the patented appliances without charge, plaintiff alleges that subsequently, at the time of the formal assignments to the defendants of an interest in the patent, there was an oral agreement with defendants that they would pay him royalties upon the use of the invention if it proved practical, that it did prove practical and defendants have used the invention in their mill to their great profit. Nothing else appearing, there is no reason why a new and different agreement by parol entered into subsequent to a written contract (one not required to be in writing), may not impose obligation. Walker on Patents, 1490, 1508.
We have considered only the plaintiff's pleadings, and in the light most favorable to him. Whether he can sustain his allegations as against the defendants' denial is another matter. As to that we express no opinion.
For the reasons stated the judgment sustaining the demurrer ore tenus
and dismissing the action is
Reversed. *Page 508